**Danny BROWN, Appellant–Respondent,**

v.

**Ginger A. BROWN, Appellee–Petitioner.**

No. 48A04–0402–CV–66.

Court of Appeals of Indiana.

March 21, 2005.

Jane G. Cotton, Anderson, IN, Attorney for Appellant.

Patrick R. Ragains, Smith & Ragains, Anderson, IN, Attorney for Appellee.

### OPINION

CRONE, Judge.

#### Case Summary

Danny Brown ("Danny") appeals the trial court's order in favor of Ginger Brown ("Ginger") that the retroactive lump sum payment of Danny's social security disability benefits to the parties' minor child may not be credited against his child support arrearage. We affirm.

#### Issue

Danny raises one issue on appeal, which we restate as follows: whether the trial court abused its discretion in determining that a retroactive lump sum payment of

social security disability benefits to the dependent child of a noncustodial parent may not be credited against that parent's child support arrearage.

## Facts and Procedural History

Danny and Ginger's marriage was dissolved on December 14, 2000. Ginger was awarded custody of their only child, G.B., born in June 1995. Danny was ordered to pay $110 per week in child support. On August 28, 2001, the State intervened on Ginger's behalf in an attempt to collect support. On October 25, 2001, Danny's support obligation was reduced to $50 per week. In an order dated May 23, 2002, the trial court declared Danny's total arrearage to be $5,145.04 as of April 30, 2002. The trial court also noted that Danny "hasn't worked this year due to back injuries [and] surgery." Appellant's App. at 20. On June 19, 2002, the trial court ordered Danny to pay $40 per week toward satisfaction of the arrearage.

On August 22, 2002, Ginger filed a request for a contempt citation against Danny for failure to pay child support. On December 3, 2002, the trial court held another hearing, which Danny failed to attend. According to an order entered that day, Danny's total arrearage remained $5,145.04. The order also stated that a body attachment would be issued on December 13, 2002, unless Danny's attorney "produces him in court to answer as to no payments on arrearage." Id. at 25. On January 27, 2003, Danny submitted to the trial court a letter from his doctor stating that he was disabled, unable to work, and had no attachable assets.

In an order dated May 20, 2003, the trial court found the total arrearage to be $7,595.04. The court ordered Danny to pay $50 per week in child support and $10 per week toward the arrearage. The court also found Danny in contempt for failure to pay support and ordered him incarcerated for thirty days, but suspended his sentence upon the condition that he satisfy his support and arrearage obligations each week. In its order, the trial court noted that Danny was preparing for back surgery and had applied for social security disability benefits in October 2002. Id. at 27.

On or about June 3, 2003, the Social Security Administration ("the SSA") sent Ginger a check for $10,377 for the benefit of G.B. According to an SSA statement issued to G.B., the check was a retroactive lump sum payment of disability benefits to which G.B. was entitled as Danny's dependent. Id. at 37.[1]

On August 18, 2003, Danny filed a Trial Rule 60 motion for relief from judgment in which he requested reimbursement of the "$10,377 support overpayment." Id. at 32. On September 18, 2003, the trial court ordered the remaining balance of the lump sum payment "frozen" pending resolution of the matter. Id. at 34; Tr. at 18. In an order dated October 29, 2003, the trial court determined that the lump sum payment of disability benefits is not child support and that Danny is not entitled to credit it against his child support arrearage. Appellant's App. at 55. Danny now appeals.

## Discussion and Decision

■ Danny contends that the retroactive lump sum payment of social security disability benefits to G.B. should be credited against his child support arrearage. Our standard of review is well settled:

---

1. The SSA statement indicates that from December 2001 to November 2002, the regular monthly payment was $494.00, and that beginning December 2002, the regular monthly payment was $501.00. Appellant's App. at 36. The statement does not specify the date on which Danny became eligible to receive disability benefits.

"We will reverse a trial court's decision in child support matters only for an abuse of discretion or if the trial court's determination is contrary to law." *Dore v. Dore*, 782 N.E.2d 1015, 1018 (Ind.Ct.App.2003).

In *Poynter v. Poynter*, 590 N.E.2d 150 (Ind.Ct.App.1992), *trans. denied*, on which Danny relies, the trial court used the social security disability benefits received by the children of the disabled custodial parent to offset the total child support obligation for both parents. On appeal, the custodial parent argued that the trial court should have credited these benefits against only her support obligation. The *Poynter* court agreed, observing that

> [a] majority of states have held that a parent is entitled to credit on child support payments for social security disability benefits paid to the children due to that parent's disability. The rationale is that social security benefits are not gratuities but are earned, and they substitute for lost earning power because of that disability.
>
> Subsequent to the adoption of state child support guidelines mandated by federal law, several states have reaffirmed the rule of crediting the disabled parent's support obligation for social security disability benefits paid to the child. Following the majority rule of other jurisdictions, we hold that the disabled parent is entitled to have child support obligations credited with the social security disability benefits received by the child because of that parent's disability.

*Id.* at 152 (citations and footnote omitted). Danny acknowledges that *Poynter* does not involve a disabled noncustodial parent but nevertheless contends that "the above principles would apply to either situation." Appellant's Br. at 9.

We decline Danny's invitation to follow *Poynter* for several reasons. First, and perhaps foremost, is our supreme court's discussion of *Poynter* in *Stultz v. Stultz*, 659 N.E.2d 125 (Ind.1995). In that case, the noncustodial parent appealed "the trial court's refusal to offset his child support obligation by the amount of Social Security retirement benefits paid directly to his children as a result of his retirement." *Id.* at 126. Relying on *Poynter*, our court reversed, holding "that a parent subject to a child support obligation is always entitled to a credit against that obligation for any Social Security benefits received by that parent's child or children as a result of that parent's retirement." *Id.* Our supreme court granted transfer and affirmed the trial court, observing that

> [a]lthough the *Poynter* court is arguably correct in asserting that a majority of jurisdictions hold that a social security recipient parent is entitled to a credit for social security payments made to a child, we find ample case law holding that such a credit is not automatic and that the presence of social security benefits is merely one factor for the trial court to consider in determining the child support obligation or modification of the obligation. We find this position to be most consistent with our state's strong emphasis on trial court discretion in determining child support obligations and our regular acknowledgement of the principle that child support modifications will not be set aside unless they are clearly erroneous.
>
> In this case, we cannot say that the trial court's decision to deny the credit was clearly erroneous. In its findings and conclusions, the court took cognizance of all the relevant factors in determining the modification of the decree, such as Mr. Stultz's retirement and thus reduced income, as well as the children's receipt of social security benefits due to his retirement. After reviewing these

factors, the court reduced Mr. Stultz's child support obligation commensurate with his reduced income after retirement. The court also found that in this case, the controlling factor in its decision as set forth in Indiana Code § 31–1–11.5–12(a) [now Ind.Code § 31–16–6–1] was the standard of living the children would have enjoyed had the marriage not been dissolved. Had the marriage not been dissolved, the court found, the children would have enjoyed the benefits of the father's retirement as well as his reduced income after retirement. Therefore, after carefully considering all of the factors in this particular case, the trial court found that a credit was not warranted. This Court has determined that reversal of a trial court's child support order deviating from the appropriate guideline amount is merited only where the trial court's determination is clearly against the logic and effect of the facts and circumstances before the trial court. Applying this standard, we cannot say that [the trial court's] order was clearly erroneous.

*Id.* at 128 (citations and footnotes omitted).

We interpret *Stultz* as rejecting what might be viewed as *Poynter's* overly mechanical approach to classifying social security benefits for purposes of determining a parent's child support obligation. Indeed, the *Stultz* court approvingly mentioned three decisions from our court that "prohibited the use of benefits payable to children under government programs ... to offset payments to which the children were otherwise entitled." *Id.* at 129; *see id.* at 129–30 (citing and quoting *Head v. State,* 632 N.E.2d 749, 752 (Ind.Ct.App. 1994) (concluding that social security disability benefits are not child support and therefore not subject to state and federal assignment of rights requirements); *Brummett v. Brummett,* 472 N.E.2d 616, 620 (Ind.Ct.App.1984) (concluding that

child's receipt of social security survivor's benefits did not warrant reducing or abolishing monthly child support obligation owed by child's father); and *Kyle v. Kyle,* 582 N.E.2d 842, 846 (Ind.Ct.App.1991) (concluding that noncustodial parent's child support obligation is not impacted by the receipt of supplemental security income by the custodial parent on behalf of a disabled child), *trans. denied* (1992)).

■ The *Stultz* court observed that although the benefits in those cases differed from the retirement benefits in its case, "the common thread that links all four of these types of benefits in our minds is that they are all payments from the government to all eligible children." *Id.* at 130. The *Stultz* court further observed,

[J]ust like the parents of the children receiving social security disability, social security survivor's, and supplemental security income benefits in these three cases, the retired parent pays no additional premiums in order to entitle his or her child to benefits—the amount of social security contributions paid by the retired parent and his or her employer are the same whether the parent is married or single and whether he or she has children or not. Perhaps more significant, the retired parent's own social security retirement benefits are not reduced or changed by the benefits his or her children receive. It seems to us that what is going on here is that Congress has created an entitlement for the minor children of all social security participants who retire. But it is the children's entitlement, not the retiree's, and should not as a general rule diminish the legal obligation of retirees to support their children.

*Id.* (footnote omitted). Likewise here, Danny paid no additional premiums to en-

title G.B. to disability benefits, and his own benefits are not reduced thereby.[2]

We acknowledge that social security disability payments to a dependent child do not fit easily into our child support guidelines. Indiana Child Support Guideline 3(A)(1) includes "social security benefits" within its definition of "weekly gross income," but this refers to benefits paid to the *parent*, not the dependent child. If anything, disability benefits paid to a dependent child would more appropriately be characterized as additional weekly income of the custodial parent before application of the support guidelines, rather than as support payments made by the noncustodial parent. In fact, giving the custodial parent dollar-for-dollar credit for disability benefits received by the dependent child in this case would result in the child's household *owing* money to the noncustodial parent on a weekly basis. The trial court did not abuse its discretion in rejecting such a fundamentally unfair result.

Affirmed.

VAIDIK, J., concurs.

RILEY, J., dissents with opinion.

RILEY, Judge, dissents with opinion.

I respectfully dissent. I would follow the precedent established in *Poynter v.*

*Poynter*, 590 N.E.2d 150, 152 (Ind.Ct.App. 1992). In *Poynter* the court considered whether a custodial parent's monthly payment of disability benefits should be credited solely as support paid by her rather than used to reduce the total support obligation allocated between both parents. *Id.* We answered that question in the affirmative, rationalizing that "[disability] benefits are not gratuities but are earned, and they substitute for lost earning power because of the disability." *Id.* The same principle applies here. Disability benefits are not means-tested income; rather, disability benefits are awarded until the recipient recovers sufficiently from a disability, regardless of the recipient's income level. *McGill v. McGill*, 801 N.E.2d 1249, 1252 (Ind.Ct.App.1004). To receive disability benefits, the recipient must show that the inability to work is medical in nature. *Id.* Moreover, disability benefits are included in the definition of "weekly gross income" for the purposes of determining child support amounts under Child Supp. G. 3(A)(1), and Indiana courts have consistently held that disability benefits are the proper subject of child support orders. *Id.*

In *Stultz*, our supreme court considered whether it was clearly erroneous for the trial court to decline to reduce a noncustodial father's child support obligation

---

**2.** We are not unmindful of Danny's observation that

> [w]hen a parent is unable to work due to a disability, and applies for Social Security Disability benefits, it often takes several months or more for the Social Security Administration to approve or deny the claim. Obviously, if the parent is unable to work, he or she is unable to pay support during that period of time. There is usually a large support arrearage existing by the time these benefits are approved.

Appellant's Br. at 10–11; *see also Stultz*, 659 N.E.2d at 129 n. 6 ("We can envisage a social security disability recipient parent making a stronger case for a credit than a social securi-

ty retirement recipient but decline to give that issue extensive treatment in this case involving only retirement benefits. Suffice it to say here that disability may affect the parent's and child's standard of living in dramatically different ways than retirement, giving rise to a stronger claim for a credit."). Nevertheless, these considerations do not change the fact that the child, not the parent, is entitled to the disability benefits that the child receives from the government, and that "parents have a legal obligation to support their dependent children." *C.M.L. ex rel. Brabant v. Republic Servs., Inc.*, 800 N.E.2d 200, 206 (Ind.Ct.App.2003), *trans. denied* (2004).

by the amount of social security retirement payments received by the children when the father retired. *Stultz*, 659 N.E.2d at 126. The trial court had declined to reduce the father's child support obligation in light of its mandatory consideration of "the standard of living the children would have enjoyed had the marriage not been dissolved." In other words, the trial court had determined that if the parents' marriage had not been dissolved, the children would have enjoyed the benefit of the father's income plus the retirement benefits. *Id.* at 127. Our supreme court affirmed the trial court's ruling after noting Indiana's "strong emphasis on trial court discretion in determining child support obligations and our regular acknowledgment of the principle that child support modifications will not be set aside unless they are clearly erroneous." *Id.* at 128. In the instant case, the trial court was neither determining nor modifying Danny's monthly support obligations. Furthermore, even if we were to look to the standard of living G.B. would have enjoyed if the marriage had not been dissolved, this would not affect the outcome. Danny is receiving disability benefits because he is unable to work; hence, he is receiving disability benefits in lieu of, not in addition to, income.

I would hold that the lump sum payment of Danny's disability benefits to G.B. should not be applied to offset his child support arrearage. I find that Danny should only be permitted to use the disability benefits to satisfy that portion of the arrearage that accumulated after he became disabled. Once the date of disability has been determined and the arrearage appropriately credited, any overpayment may then be either credited to future child support payments or refunded by Ginger. *See Drwecki v. Drwecki*, 782 N.E.2d 440, 447 (Ind.Ct.App.2003) (determining that the general rule that "child support pay-

ments cannot be applied prospectively to support not yet due at the time of overpayment" does not apply where the non-custodial parent did not voluntarily build up a substantial credit) (quoting *Matson v. Matson*, 569 N.E.2d 732, 733 (Ind.Ct.App. 1991)).